# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00065-CV

**Juan Enriquez, Appellant**

**v.**

**Cristina Melton Crain, Individually and in her Official Capacity as former Chair of the Texas Board of Criminal Justice; Brad Livingston, Individually and in his Official Capacity as Executive Director of the Texas Department of Criminal Justice; Nathaniel Quarterman, Individually and in his Official Capacity as former Director of the Texas Department of Criminal Justice; and John Rupert, Individually and in his Official Capacity as former Warden of the Texas Department of Criminal Justice's Michael Unit, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-09-002079, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## MEMORANDUM OPINION

The opinion and judgment issued herein on August 7, 2013, are withdrawn, and the following opinion is substituted in lieu of the earlier one. Appellant's motion for rehearing is overruled.

Juan Enriquez, an inmate confined in the Institutional Division of the Texas Department of Criminal Justice who is appearing pro se and in forma pauperis, appeals the dismissal of his suit. Enriquez sued Cristina Melton Crain, individually and in her official capacity as former Chair of the Texas Board of Criminal Justice; Brad Livingston, individually and in his official

capacity as Executive Director of the Texas Department of Criminal Justice; Nathaniel Quarterman, individually and in his official capacity as former Director of the Texas Department of Criminal Justice; and John Rupert, individually and in his official capacity as former Warden of the Texas Department of Criminal Justice's Michael Unit (collectively "the State officials") alleging causes of action under 42 U.S.C. § 1983 and a claim for false imprisonment. Enriquez sought a declaration that the State officials had violated state law and an injunction requiring them to comply with that law. Enriquez sought actual and exemplary damages as well as unspecified "prospective equitable relief." The trial court dismissed the claims as frivolous pursuant to chapter 14 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 14.001-.014. Enriquez perfected this appeal. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 1966, Enriquez was convicted in Karnes County district court of murder with malice and sentenced to death. *See Ex parte Enriquez*, 490 S.W.2d 546, 547 (Tex. Crim. App. 1973) (setting out timeline). On February 14, 1968, the Texas Court of Criminal Appeals affirmed the judgment of conviction. *Enriquez v. State*, 429 S.W.2d 141, 145 (Tex. Crim. App. 1968). In 1969, Enriquez was also convicted of four counts of murder and was sentenced to 99 years' imprisonment for each count. Three of the convictions were in Nueces County district court and one was in Wilson County district court. On June 29, 1972, the United States Supreme Court declared the death penalty an unconstitutional sentence and remanded all death sentences to state courts for further consideration. *See Furman v. Georgia*, 408 U.S. 238 (1972). In response to the *Furman* mandate, the court of criminal appeals determined that the Governor of Texas possessed

the power under the Texas Constitution to commute all death sentences. *See Whan v. State*, 485 S.W.2d 275, 276 (Tex. Crim. App. 1972). On August 31, 1972, Governor Preston Smith commuted Enriquez's death sentence to life in prison.

In May 2006, Enriquez filed a petition for writ of habeas corpus in federal district court contending that he was being illegally confined beyond the discharge of the three Nueces County 99-year sentences.[1] *See Enriquez v. Quarterman*, C.A. No. C-06-207, 2009 WL 1405687, at *1 (S.D. Tex. May 18, 2009). While the petition was pending, officials with the Texas Department of Criminal Justice signed certificates retroactively discharging the three Nueces County sentences as of November 18, 2002. Quarterman then moved to dismiss Enriquez's habeas petition for lack of jurisdiction on the ground that Enriquez was no longer being confined pursuant to the three challenged sentences. *Id.* The court granted the motion to dismiss. Although the 99-year sentences were discharged, Enriquez remained in custody pursuant to the life sentence received as the result of the Governor's commutation of his death sentence. *Id.* at *2 ("[Enriquez] is still serving a life sentence for his conviction in cause number 3862 from Karnes County.").

In August 2008, Enriquez filed in Karnes County district court a document titled "Motion for Nunc Pro Tunc Pronouncement of Sentence." In his motion, Enriquez asserted that the Karnes County court had not sentenced him to life in 1972 and requested that the court formally "pronounce the sentence granted to [him] by the Governor of Texas." *See Enriquez v. State*, No. 04-10-00071-CR, 2011 WL 2637370, at *1 (Tex. App.—San Antonio July 6, 2011, pet. ref'd) (mem. op., not designated for publication). The trial court held a hearing, at the conclusion of which

---

[1] Enriquez's petition did not rely on the Wilson County sentence.

it pronounced, as an order of the court, that "Juan Rudy Enriquez is hereby sentenced to life imprisonment in the Texas Department of Criminal Justice; the Institutional Division as it is currently called. And the Court hereby remands Juan Rudy Enriquez to the custody of the Sheriff of Karnes County to carry out the terms of this sentence." *Id.* The district court then signed a document entitled "Sentence" in conformity with its oral pronouncement in open court. *Id.* at \*2. On appeal, the San Antonio Court of Appeals vacated the district court's "Sentence," holding that, after a commutation, no additional court action is necessary to effectuate the commuted punishment. *Id.* at \*3. The court concluded that Enriquez was incorrect in insisting that the Karnes County district court was required to formally pronounce a sentence following the Governor's commutation of his death sentence to life imprisonment. *Id.* at \*2.

In June 2009, Enriquez filed his original petition in the underlying proceeding. He alleged that the State officials had violated his rights to due process and equal protection by confining him without the commitment sentence required by law. He further alleged that they had no authority to confine him without a commitment sentence. The State officials filed a motion to dismiss the suit as frivolous pursuant to chapter 14 of the civil practice and remedies code. After conducting a non-evidentiary hearing on the motion, the court provided Enriquez an opportunity to amend his petition to allege a claim that had an arguable basis in law. Enriquez filed an amended petition in November 2011. In December 2011, the court, after a second non-evidentiary hearing on the State officials' motion to dismiss Enriquez's suit, signed an order dismissing the suit as frivolous pursuant to chapter 14. Enriquez then perfected this appeal.

**DISCUSSION**

In his first issue, Enriquez contends that dismissal of his suit was improper because the State officials' motion to dismiss was based on a supplemental petition he had filed in June 2010, which he contends was superseded by his amended petition filed in November 2011. Enriquez argues that the trial court erred by permitting the State officials to challenge his first amended petition at the December 2011 hearing. Specifically, Enriquez asserts that "[t]he court did not have discretion to decide a motion challenging a legally dead pleading nor to use that motion to discount or dismiss the live pleading without examination which accepts the pleaded facts as true." We understand Enriquez's argument to be that the trial court has no discretion to dismiss pursuant to chapter 14 without a written motion to dismiss specifically directed at his live pleading.

Chapter 14 of the civil practice and remedies code applies to any suit, such as this one, filed by an inmate who declares himself unable to pay costs. *See* Tex. Civ. Prac. & Rem. Code § 14.002(b). Section 14.003 authorizes a trial court to dismiss an inmate's claims as frivolous even in the absence of a motion requesting it to do so. *See id.* § 14.003(a) (court may dismiss claim, "either before or after service of process," if court finds that claim is frivolous); *Conely v. Texas Bd. of Crim. Justice*, No. 03-10-00422-CV, 2011 WL 3890404, at *4 (Tex. App.—Austin Aug. 31, 2011, no pet.) (mem. op.). Therefore, even if Enriquez is correct that the State officials' motion was not directed to his live pleading, the trial court had the authority to dismiss Enriquez's claims without such a motion, and we review that dismissal for an abuse of discretion. *See Leachman v. Dretke*, 261 S.W.3d 297, 303 (Tex. App.—Fort Worth 2008, no pet.). We overrule Enriquez's first issue.

5

Issues two through five assert that the trial court abused its discretion in dismissing his suit. As stated above, section 14.003 authorizes a trial court to dismiss an inmate's claim, filed in forma pauperis, either before or after service of process occurs, if it finds the claim to be frivolous. *See* Tex. Civ. Prac. & Rem. Code § 14.003(a)(2). A claim is frivolous if it has no basis in law or in fact. *See id.* § 14.003(b)(2). A claim is considered to have no arguable basis in law when either the legal theory on which it is based is indisputably meritless or the factual allegations on which it is based are wholly incredible or irrational. *Nabelek v. District Att'y of Harris Cnty.*, 290 S.W.3d 222, 228 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). An inmate's cause of action may not be dismissed merely because the court considers the allegations "unlikely." *Minix v. Gonzales*, 162 S.W.3d 635, 637 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

We review dismissal under chapter 14 for an abuse of discretion. *Leachman*, 261 S.W.3d at 303. A trial court abuses its discretion if it acts unreasonably or without reference to any guiding rules or principles. *Id.* We review de novo whether the plaintiff's claims have no basis in law such that dismissal on that ground is authorized. *See Retzlaff v. Texas Dep't of Crim. Justice*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). In conducting our review, we take as true the allegations in the plaintiff's petition. *Scott v. Gallagher*, 209 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We examine the claims asserted and the relief requested to determine whether the petition stated a cause of action that could authorize relief. *Hamilton v. Williams*, 298 S.W.3d 334, 339 (Tex. App.—Fort Worth 2009, pet. denied). It has been stated that a pro se inmate's petition should be viewed with liberality and patience and is generally

6

not held to the stringent standards applied to pleadings drafted by attorneys. *Minix*, 162 S.W.3d at 637 (citing *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)).

Informed by this standard of review, we consider whether Enriquez's first amended petition alleged a cause of action that could authorize relief. Enriquez's first cause of action, brought pursuant to 42 U.S.C. § 1983, alleges that he was denied his right to due process and equal protection and was subjected to cruel and unusual punishment because he was confined without the commitment warrant required by articles 42.02 and 42.09 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 42.02 (sentence is part of judgment that orders that punishment be carried into execution), .09 (defendant shall be delivered to jail or to institutional division when his sentence is pronounced). We understand these allegations to reassert the position Enriquez took in the Karnes County district court proceeding, in which he insisted that some further court action was required after the Governor commuted his sentence. The San Antonio Court of Appeals has already held, however, that no further court action was required after the commutation, and no subsequent pronouncement of sentence was necessary. *See Enriquez*, 2011 WL 2637370, at *3. With respect to his claim that his equal protection rights were violated because he was held without a commitment warrant when no other prisoner's were detained without such a warrant, this claim also lacks merit. Enriquez's confinement without a separate commitment warrant after his death sentence was commuted does not violate his equal-protection rights because he is not being treated differently from similarly situated prisoners. A commitment warrant was issued when Enriquez was initially sentenced. "[A] commutation does not affect the judgment [of conviction], but merely mitigates the punishment which can be given." *Id.* (quoting *Whan*, 485 S.W.2d at 277). No additional or separate

7

commitment warrant was necessary after the commutation. And while Enriquez alleges that "no other" prisoner is being held without a separate commitment warrant, he does not allege that other prisoners whose death sentences had been commuted were treated differently from him and were held pursuant to a separate commitment warrant. *See Smith v. State*, 898 S.W.2d 838, 846 (Tex. Crim. App. 1995) (no equal-protection violation when appellant treated in same manner as all similarly situated capital defendants). The most that could be said is that Enriquez is similarly situated to other prisoners whose death sentences had been commuted, not to the inmate population as a whole. *See Phillips v. United States*, No. C-10-119, 2010 WL 3910059, at *3 (S.D. Tex. 2010), *aff'd*, 434 Fed. Appx. 380, 2011 WL 3241947 (5th Cir. 2011); *Cross v. Berkebile*, 646 F. Supp. 2d 839, 843 (N.D. Tex. 2009).

Enriquez further contends in his first cause of action that his due-process rights were violated and he was subjected to cruel and unusual punishment because the State officials refused to discharge his 99-year sentences on September 18, 2002, but instead retroactively discharged them almost five years later. These sentences were discharged, effective September 18, 2002, in January 2007. Enriquez does not explain how, in the absence of a discharge of his life sentence, he has been harmed by the lapse of time between the date his 99-year sentences were actually discharged and the date the discharge certificates were signed, nor does his petition identify any relief to which he is entitled as a result.

In his appellate brief, Enriquez explains that he seeks a declaratory judgment that the State officials wrongfully failed to recognize until January 2007 that he had discharged his 99-year sentences. But to the extent he is seeking a declaration that the State officials' past actions were

8

inconsistent with governing statutes, rules, or court orders, governmental immunity would bar any such claim. The ultra vires exception to immunity permits only prospective, as opposed to retroactive, declaratory relief. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 374-77 (Tex. 2009). The Declaratory Judgments Act is "intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed, and 'is preventative in nature.'" *Etan Indus. Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011). Enriquez's request for a declaration regarding past actions taken by the State officials does not seek any prospective declaratory relief. His claim for retroactive declaratory relief is therefore barred by governmental immunity. *Heinrich*, 284 S.W.3d at 374-77. The trial court therefore did not abuse its discretion in concluding that Enriquez's first cause of action had no arguable basis in law and dismissing it as frivolous.

Enriquez's second cause of action alleges that the State officials violated state law by accepting him into custody as a prisoner without a commitment warrant. As set forth above, the San Antonio Court of Appeals has held that no further court action was needed to effectuate Enriquez's life sentence after the Governor's commutation of his death sentence. Moreover, the relief Enriquez requests—prospective injunctive relief to compel the State officials to comply with the law—is not available. *See Hailey v. Glaser*, No. 06-12-00065-CV, 2012 WL 5872869, at *3 (Tex. App.—Texarkana Nov. 21, 2012, no pet.) (mem. op.) (general injunction seeking "compliance with the law" too indefinite to be granted). The trial court did not abuse its discretion by concluding that this cause of action had no arguable basis in law and dismissing it as frivolous.

Enriquez's third cause of action alleges a claim for false imprisonment. First, he contends that the State officials detained him by confining him in prison beyond the date his 99-year

sentences were discharged. But, as the federal district court noted in *Enriquez v. Quarterman*, even after discharge of the 99-year sentences, Enriquez continued to be lawfully confined pursuant to the life sentence for his murder conviction in the Karnes County district court. *Quarterman*, 2009 WL 1405687, at *2. Because Enriquez was subject to confinement even after his 99-year sentences were discharged, detaining him past the discharge date did not constitute false imprisonment. Enriquez also alleges that the State officials' failure to comply with articles 42.02 and 42.09 of the code of criminal procedure, i.e., confining him without a sentence having been pronounced, caused his detention to constitute false imprisonment. Again, no further trial court action was necessary after the Governor commuted Enriquez's death sentence. Therefore, the trial court did not abuse its discretion by concluding that Enriquez's false-imprisonment claim had no arguable basis in law and dismissing it as frivolous.

Having concluded that the trial court did not abuse its discretion by dismissing each of Enriquez's causes of action, we overrule his second, third, fourth, and fifth appellate issues.

In his sixth issue, Enriquez asserts that the trial court had a mandatory duty to file properly requested findings of fact and conclusions of law but failed to do so. In the present case, however, the trial court dismissed Enriquez's claims without an evidentiary hearing because they lacked any arguable basis in law. *See Sawyer v. Texas Dep't of Crim. Justice*, 983 S.W.2d 310, 311 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (dismissal without holding fact hearing can only be based on lack of arguable basis in law). In such a situation the trial court is not acting as a factfinder; consequently, the failure to file findings of fact is not error. *See Retzlaff*, 94 S.W.3d at 655 (citing *Timmons v. Luce*, 840 S.W.2d 582, 586 (Tex. App.—Tyler 1992, no writ) (holding no

duty to file findings after dismissal of inmate suit under civil practice and remedies code chapter 13)). Accordingly, the trial court was not required to file findings of fact and conclusions of law, and its failure to do so was not error. *See id.* We overrule Enriquez's sixth appellate issue.

## CONCLUSION

Having overruled Enriquez's six appellate issues, we affirm the trial court's dismissal order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed on Motion For Rehearing

Filed:   January 16, 2014